IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 16, 2005 Session

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES, v. S.A.M.H.

**Appeal from the Juvenile Court for Sullivan County**
**No. J28,871     Steven H. Jones, Judge**

**No. E2004-02543-COA-R3-PT - FILED APRIL 13, 2005**

On May 27, 2004, the Juvenile Court Referee entered an order terminating the parental rights of S.A.M.H. ("Mother") to her two minor daughters. The Referee concluded that the State of Tennessee, Department of Children's Services ("DCS") had proven by clear and convincing evidence that grounds to terminate Mother's parental rights existed and that doing so was in the best interests of the children. Pursuant to Tenn. R. Juv. P. 4(c)(2), the Referee was required to inform Mother of her right to request a rehearing before the Juvenile Court Judge as well as the manner and time limits within which to perfect such a request. The Referee inadvertently failed to inform Mother than she had only five judicial days in which to file her request for a rehearing. Mother filed her request for a rehearing one day late. The Juvenile Court Judge dismissed Mother's appeal after concluding that it was untimely and the Referee's decision had become final after five judicial days. We vacate the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Juvenile Court Vacated; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Murry C. Groseclose, III, Kingsport, Tennessee, for the Appellant S.A.M.H.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee, Department of Children's Services.

**OPINION**

**Background**

This is an appeal from the termination of Mother's parental rights to her two daughters who are currently six and thirteen years old. This case began in October of 2001 when DCS filed a petition for temporary custody claiming the children were dependent and neglected. More specifically, DCS alleged that Mother and Father were using illegal drugs not only in their home but also in the presence of the minor children.[1] DCS claimed the older child was aware of the drug use and that her parents were injecting illegal drugs intravenously. The Juvenile Court Judge granted the petition and temporary custody of the children was placed with DCS.

The record contains only one complete permanency plan ("Plan"). The Plan pertains only to the younger child and was signed by Mother and Father on November 20, 2002, over one year after temporary custody of both children was placed with DCS.[2] The Plan required Mother to accomplish several objectives including, but not limited to: 1) obtain employment and have a stable and suitable income to care properly for the children; 2) participate in appropriate drug and alcohol treatment; 3) participate in support group meetings; 4) stop all use of alcohol, illegal drugs, and prescription drugs for which Mother did not have a valid prescription; 5) submitt to periodic random drug and alcohol tests; and 6) attend counseling.

DCS filed a petition in October of 2003 to terminate Mother's parental rights. As grounds for terminating Mother's parental rights, DCS alleged that: 1) the children had been removed from the home for at least six months and the conditions which led to their removal persisted; 2) there was little likelihood that these conditions would be remedied at an early date which would permit a safe return of the children to Mother; and 3) continuation of the parent/child relationship would greatly diminish the children's chances of early integration into a safe, stable and permanent home. DCS also alleged there had not been substantial compliance by Mother with the terms of the permanency plans. Finally, DCS alleged it would be in the children's best interests for Mother's parental rights to be terminated.

_____

[1] When the petition for temporary custody was filed, Mother was married to C.K.H., the biological father of the younger child and stepfather of the older child. C.K.H.'s parental rights to his daughter also were terminated. C.K.H. has not appealed that determination and it is not at issue on appeal. The biological father of the older child is C.W., whose parental rights likewise were terminated with no appeal being taken from that order. For ease of reference only, in this Opinion we will refer to C.K.H. as "Father."

[2] Documents in the record suggest that permanency plans for both children initially were developed in November of 2001. We are at a loss as to why these plans are not in the record on appeal. There also is no explanation why the record contains no complete permanency plan(s) regarding the older child. We call DCS's attention to *State of Tennessee, Department of Children's Services v. B.B.M.*, No. E2004-00491-COA-R3-PT, 2004 Tenn. App. LEXIS 767 (Tenn. Ct. App. Nov. 17, 2004), *no appl. perm. appeal filed*, where we reversed the trial court's termination of the mother's parental rights for failing to substantially comply with the terms of a permanency plan when that plan or plans were not contained in the record on appeal.

A trial was conducted before the Juvenile Court Referee on May 19, 2004. At the conclusion of the trial, the Referee orally announced that DCS had proven by clear and convincing evidence that grounds existed to terminate Mother's parental rights and that doing so was in the best interests of the children. The Referee then stated that he was "hearing the case as referee. Any appeal would be to Judge Jones. You have to do it within the appropriate time period. After that, any appeal would be to the Court of Appeals." The Referee did not inform Mother of the specific time limit, five judicial days, she had in which to perfect an appeal to the Juvenile Court Judge.

An order terminating Mother's parental rights was entered on May 27, 2004. In this order the Referee terminated Mother's parental rights pursuant to the provisions of Tenn. Code Ann. §§ 36-1-113(g)(2) and (g)(3), which provide as follows:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
>
> * * *
>
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
>
> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> > (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> >
> > (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> >
> > (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

As noted previously, the Referee found there was clear and convincing evidence that these two statutory grounds had been met and that there was clear and convincing evidence that termination of Mother's parental rights was in the children's best interests.

Mother appealed and filed her request for a *de novo* hearing on June 7, 2004, some six judicial days after entry of the Referee's order. The Juvenile Court Judge denied Mother's request for a *de novo* hearing as being untimely. According to the Juvenile Court Judge:

> After reviewing the record, the Court found that the appeal was not filed in a timely manner in that it was filed more than five (5) days after the Referee's decision was made and the Referee's decision becomes final after five (5) days.… [T]he appeal is hereby dismissed and the ruling of the Referee in this matter is final.

Mother appeals raising three issues. The first issue is whether the Juvenile Court Judge erred in refusing to grant Mother's untimely request for a *de novo* hearing after the Referee, in violation of Tenn. R. Juv. P. 4(c)(2), failed to advise Mother of the time limit of five judicial days in which to perfect an appeal. The next issue involves Mother's claim that the Referee erred in refusing to allow certain testimony explaining the extent of Mother's physical pain at the time she apparently forged a prescription. Mother's third issue is her claim that in light of her "rehabilitation successes" the Referee erred in concluding DCS had proven by clear and convincing evidence that Mother's parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(3).

## Discussion

The factual findings of the Juvenile Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). In *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 Tenn. App. LEXIS 317 (Tenn. Ct. App. May 12, 2004), *no appl perm appeal filed*, this Court observed that:

> Because of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c), we must adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds for terminating the biological parent's parental rights. *Jones v. Garrett*, 92 S.W.3d at 838; *In re Valentine*, 79 S.W.3d at 546; *Ray v. Ray*, 83 S.W.3d at 733; *In re L.S.W.*, 2001 Tenn. App. LEXIS 659,

No. M2000-01935-COA-R3-JV, 2001 WL 1013079, at *5 (Tenn. Ct. App. Sept. 6, 2001), *perm. app. denied* (Tenn. Dec. 27, 2001).

*In re Adoption of T.A.M.,* 2004 Tenn. App. LEXIS 317, at ** 8-9 (footnote omitted).

In *Dep't of Children's Servs. v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights. Specifically, we observed:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).
>
> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)....

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed.*

Mother's first issue is her claim that even though her appeal to the Juvenile Court was filed one day late, she nevertheless is entitled to a *de novo* hearing before the Juvenile Court Judge because the Referee did not inform her that she had only five judicial days in which to file the appeal. Tenn. Code Ann. §§ 37-1-107(e) and (f) provide as follows:

> (e) Any party may, within five (5) days thereafter, excluding nonjudicial days, file a request with the court for a hearing by the judge of the juvenile court. The judge may, on the judge's own

motion, order a rehearing of any matter heard before a referee, and shall allow a hearing if a request for such hearing is filed as herein prescribed.  Unless the judge orders otherwise, the recommendation of the referee shall be the decree of the court pending a rehearing.

(f)  In case no hearing before the judge is requested, or when the right to a hearing is waived, the findings and recommendations of the referee become the decree of the court when confirmed by an order of the judge.  The final order of the court is, in any event, proof of such confirmation, and also of the fact that the matter was duly referred to the referee.  A party may appeal such order pursuant to the provisions of § 37-1-159.

In addition to the foregoing statutory provisions, appeals from a Referee to a Juvenile Court Judge also are addressed in the Rules of Juvenile Procedure.  As relevant to this appeal, Tenn. R. Juv. P. 4(c) and (d) provide:

(c) REQUEST FOR REHEARING BEFORE JUDGE.  (1) Any party may, within five judicial days of the transmittal to the judge of the written findings and recommendations of the referee, file a request with the court for a hearing by the judge of the juvenile court.  The judge may, on his or her own motion, order a rehearing of any matter heard before a referee, and shall allow a hearing if a request for such hearing is filed as herein prescribed.…

(2)  Each party shall be informed at the hearing before the referee of the right to a rehearing before the juvenile court judge, of the time limits within which a request for a rehearing must be perfected, and of the manner in which to perfect such request.

(3)  Unless the judge orders otherwise, the recommendations of the referee shall be the decree of the court pending a rehearing.

(d) CONFIRMATION OF REFEREE'S FINDINGS AND RECOMMENDATIONS.  In case no hearing before the judge is requested, or when the right to a hearing is waived, the findings and recommendations of the referee become the decree of the court when confirmed by an order of the judge. The final order of the court shall, in any event, be proof of such confirmation, and also of the fact that the matter was duly referred to the referee.

While the timeliness of Mother's appeal was being addressed by the Juvenile Court Judge, Mother's counsel supplied the Juvenile Court with an affidavit explaining that he was out of

town when the Referee's order was entered and that he never received a copy of the order in the mail. According to Mother's counsel, "As I was not advised by the Juvenile Court Referee that I only had five judicial days to file a *de novo* appeal as required by Tennessee Rules of Juvenile Procedure 4(c)(2), I assumed I had 10 days to file [Mother's] appeal as opposed to only 5 judicial days."

DCS argues that the five judicial day time period in which to file an appeal is jurisdictional and, therefore, the Juvenile Court Judge was without subject matter jurisdiction to entertain Mother's appeal even if it wanted to. DCS relies on the "closely analogous situation" involving appeals from general sessions court to circuit court and cites several cases holding that the ten day period to file such an appeal is indeed jurisdictional. *See e.g.*, *Love v. College Level Assessment Servs., Inc.*, 928 S.W.2d 36, 38 (Tenn. 1996)(the ten day period to file an appeal from general sessions court to circuit court "is no mere technical formality: it is in fact a mandatory requirement, and if it is not complied with the court has no jurisdiction over the case.").

In *State ex rel. Jackson v. Russell*, No. 01-A-01-9706-JV-00267, 1998 Tenn. App. LEXIS 115 (Tenn. Ct. App. Feb. 6, 1998), *no appl. perm. appeal filed*, the Middle Section of this Court was called upon to decide whether a juvenile court judge could reverse a decision by a referee after the referee's decision "allegedly had become final" once the five judicial days to appeal had passed. *Id.*, at *1. In resolving this issue, the *Russell* Court quoted the provisions of Tenn. Code Ann. §§ 37-1-107(e) and (f) set forth above.[3] We then stated:

> [W]e think the Juvenile Judge had the power, on his own motion, to rehear the matters decided by the Referee.… There are no time limits in the statute within which the judge must act to review the Referee's order. But of most significance is the provision that requires the confirmation by the judge in order for the Referee's findings and recommendations to become final. *See Chapman v. Malone*, 874 S.W.2d 66 (Tenn. App. 1993). There is nothing in this record showing that the Juvenile Judge confirmed the Referee's order of October 13, 1995; therefore, the order did not reach that stage of finality that would prevent the Juvenile Judge from reviewing it.

*Russell*, 1998 Tenn. App. LEXIS 115, at ** 4-6.

In *Chapman v. Malone*, 874 S.W.2d 66 (Tenn. Ct. App. 1993), the juvenile court referee entered an order of legitimation establishing the defendant as the biological father of the plaintiff's minor child. However, the referee's order never was confirmed by the juvenile court judge as provided for in Tenn. R. Juv. P. 4(d). Almost three years later, the defendant filed a petition to vacate the referee's order. The juvenile court judge dismissed defendant's petition. On appeal, this Court held that because the referee's order never had been confirmed by the juvenile court judge,

---

[3] There have been no substantive changes to Tenn. Code Ann. §§ 37-1-107(e) and (f) since the decision in *Russell*.

the referee's order was not a final appealable order from which an appeal to this Court would lie as required by Tenn. R. App. P. 3. *Id*. at 67.

Returning to the present case, we cannot fully resolve this appeal simply by deciding whether the five day time limit to perfect an appeal is jurisdictional. If we take on the jurisdictional issue and conclude the five day period is jurisdictional, we then would need to determine whether the Referee's failure to comply with Tenn. R. Juv. P. 4(c)(2) resulted in the Juvenile Court Judge retaining jurisdiction. On the other hand, because a juvenile court judge can grant a full rehearing on his own motion regardless of whether a timely appeal is filed, we can avoid the jurisdictional issue altogether and decide whether the Juvenile Court Judge should have ordered a full rehearing on his own motion as a way to remedy the effects of the Referee's failure to comply with Tenn. R. Juv. P. 4(c)(2).

Regardless of how we proceed, it is undisputed that the Referee inadvertently failed to comply with the requirements of Tenn. R. Juv. P. 4(c)(2) by not informing Mother of "the time limits within which a request for a rehearing must be perfected." Although Rule 4(c)(2) is not a statute, "the rules governing practice and procedure in the trial and appellate courts of this state are promulgated by the joint action of the legislature and the Supreme Court. They have the force and effect of law." *See Stempa v. Walgreen Co*., 70 S.W.3d 39, 42 n.2 (Tenn. Ct. App. 2001)(quoting *Richards v. Newby*, 1991 WL 163541 at * 3 (Tenn. Ct. App. Aug. 27, 1991)). We also must consider Mother's counsel's affidavit which indicates that the appeal would have been filed timely had Mother been apprised of the specific time limit.[4] More importantly, all of the foregoing must be considered in light of Mother's constitutionally protected and fundamental right to the care, custody, and control of her children. *See Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988).

After reading the transcript from the hearing on whether Mother was entitled to a *de novo* hearing before the Juvenile Court Judge, it appears to this Court that the Juvenile Court Judge certainly wanted to correct any potentially negative effects flowing from the Referee's inadvertent noncompliance with Tenn. R. Juv. P. 4(c)(2). However, the Juvenile Court Judge believed he was without any jurisdiction to do so. This belief was mistaken because at that particular point in time the Referee's order had yet to be confirmed by the Juvenile Court Judge. Therefore, the Referee's order was not final even though the time for Mother to perfect an appeal may have passed. Absent a final order of confirmation, the Juvenile Court Judge had the authority under Tenn. Code Ann. 37-1-107(e) and Tenn. R. Juv. P. 4(c)(1) to order a full evidentiary rehearing regardless of whether Mother had filed a timely appeal. After considering all relevant factors, including the Referee's failure to comply with Tenn. R. Juv. P. 4(c)(2) as well as Mother's constitutionally protected rights,

---

[4] This should not be interpreted as minimizing in any way the importance of an attorney's responsibility to read the applicable statutes and rules and ascertain for herself the various deadlines applicable to that particular case.

we hold that under these circumstances the Juvenile Court Judge erred by not granting Mother a rehearing on his own motion.[5]  In light of this holding, Mother's remaining issues are pretermitted.

## **Conclusion**

The Judgment of the Juvenile Court is vacated, and this cause is remanded to the Juvenile Court for further proceeding as necessary and consistent with this Opinion.  Costs on appeal are assessed against the Appellee State of Tennessee, Department of Children's Services.

_____
D. MICHAEL SWINEY, JUDGE

---

[5] In *Kelly v. Evans*, 43 S.W.3d 514 (Tenn. Ct. App. 2000), we held that the hearing contemplated in Tenn. Code Ann. § 37-1-107(e) relative to appeals from a referee's decision is a traditional *de novo* hearing and not merely a *de novo* hearing based upon the record of the hearing before the referee.  *Kelly* does not address which type of *de novo* hearing is required when a juvenile court judge orders a rehearing on its own motion.  Although we decline to formally decide this issue generally, we nevertheless believe given the procedural history of this case that Mother is entitled on remand to a "traditional" *de novo* hearing.